IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **WENDY ANN KORDISCH,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Case No. 3:14-CV-3890-BK** |
| | § | |
| **CAROLYN COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| **Defendant.** | § | |

### MEMORANDUM OPINION AND ORDER

The parties have consented to proceed before the magistrate judge. Doc. 18. Now before the Court is Plaintiff's *Motion for Summary Judgment*. Doc. 22. Defendant has filed a brief in opposition, in which she seeks affirmance of her administrative decision.[1] Doc. 25 at 30. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 22, is **DENIED,** and the Commissioner's decision is **AFFIRMED**.

### I.   BACKGROUND

#### A.  Procedural Background

Plaintiff seeks judicial review of a final decision by the Commissioner denying her applications for disability insurance benefits and supplemental security income under the Social Security Act ("The Act"). Plaintiff filed her applications in 2008, alleging a disability onset date of April 11, 2005. Doc. 12-7 at 2. After the applications were twice denied, she requested an administrative hearing. Doc. 12-5 at 2-9, 13-19, 20-21. A total of three hearings were held before an administrative law judge ("ALJ"). Doc. 12-3 at 39-103. After the first hearing, the

---

[1] In so doing, Defendant failed to comply with the Court's *Scheduling Order* requiring that she file a cross motion for summary judgment, Doc. 16 at 2, and N.D. TEX. L. CIV. R. 9.1, requiring that, unless otherwise ordered, "all parties to actions filed under 42 U.S.C. § 405(g) must file motions for summary judgment."

ALJ issued a decision denying her claim.  Doc. 12-4 at 6-20.  Subsequently, the Appeals Council remanded the case to the ALJ, citing the ALJ's failure to properly consider the consultative medical opinion of Dr. Howard Parness, M.D.  Doc. 12-4 at 26-28.  After two supplemental hearings, the ALJ issued his May 10, 2013, decision again denying Plaintiff's claim.  Doc. 12-3 at 13-30.  The Appeals Council denied Plaintiff's request to review the latter decision, Doc. 12-3 at 5-7, which became the final decision of the Commissioner.  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

### B.  Factual Background

Plaintiff was 41 years old on her alleged disability onset date, Doc. 12-7 at 2, and was a high school graduate with some junior college.  Doc. 12-3 at 42.  She had worked for Bank of America ("BOA") for almost 18 years as a loan officer.  Doc. 12-3 at 62.

*Plaintiff's Testimony*

Plaintiff testified at the January 19, 2010, April 24, 2012, and April 15, 2013, hearings. She averred that in April 2004, she "blew a disc" in her lower back while attempting to lift her ailing husband.  Doc. 12-3 at 46, 73.  She developed severe pain that was eventually traced to herniated discs in her lumbar-sacral region.  Doc. 12-3 at 46, 73.  As a result, she has difficulty standing for longer than 20 minutes at a time before she experiences pain that "starts in the middle of [her] back and radiates over to [her] hip and goes down to [her] right buttocks".  Doc. 12-3 at 46-47, 73, 90.  Plaintiff drives once or twice a week.  Doc. 12-3 at 82.  She also indicated that she experiences knee pain resulting from bilateral osteoarthritis in both of her knees.  Doc. 12-3 at 47.

In addition to severe pain, Plaintiff randomly experiences debilitating fatigue.  Doc. 12-3 at 43, 71-72.  Plaintiff testified that after she returned to work at BOA, she continued to

experience incapacitating fatigue and "mud brain." Doc. 12-3 at 43, 71. In 2005, BOA terminated Plaintiff's employment due to her inability to "come in and be productive," Doc. 12-3 at 43, 72, 84. Plaintiff indicated that she also suffers from depression and anxiety; however, she refuses to take any antidepressant medication. Doc. 12-3 at 53-54, 65.

After being terminated by BOA, Plaintiff "tried to work [her] way back into going to work" and "build [her] strength back" by volunteering as a kindergarten aide at her son's private school. Doc. 12-3 at 54-55, 76, 83, 92. However, her fatigue and pain increased to the point that she was sometimes unable to go in to work. Doc. 12-3 at 55-56, 76, 92. The following fall, the school declined to have her return as a volunteer because she was not dependable. Doc. 12-3 at 56, 91-92.

According to Plaintiff, at times of increased stress or high pain, she must take higher doses of oral steroids in order to stave off Addisonian crises. Doc. 12-3 at 47-48, 71, 73. Her symptoms vary from day to day, Doc. 12-3 at 47-51, but any significant activity leaves her exhausted, Doc. 12-3 at 49-50. Plaintiff testified that even on those days when she feels comparatively well, she's "done" by 1:00 pm and must lie down. Doc. 12-3 at 50. At the 2012 and 2013 hearings, Plaintiff recounted a total of four hospitalizations for renal failure, beginning in 2008. Doc. 12-3 at 62-63, 83-84.

Plaintiff averred that the "Addison's also comes with impaired mental confusion," and while she was not aware that she had experienced that symptom, she noted it on discharge papers from one of the hospitals. Doc. 12-3 at 100. She testified that her son told her that she "wasn't always making proper sense," and that he has said to her, "mom, go take some steroids. You need to lay [sic] down and take some steroids." Doc. 12-3 at 101-102.

At the third hearing before the ALJ, on April 15, 2013, Dr. Murphy, a medical expert, and Dr. Anderson, a vocation expert, also testified.  Based on a review of Plaintiff's medical records, Dr. Murphy listed her impairments as (1) adrenal insufficiency that is possibly caused by Addison's disease, an autoimmune disorder, (2) morbid obesity, (3) back problems due to a herniated disc with minimal bulge, and (3) mild degenerative disease of her knee.  Doc. 12-3 at 92-95.  He further testified that based on the impairments gleaned from the medical records, Plaintiff could function at a sedentary level, avoiding heavy lifting, with postural limitations "in the occasional range."  Doc. 12-3 at 95.  Also, she would need to avoid "extremes of temperature and humidity."  Doc. 12-3 at 95.  Dr. Murphy testified that "usually somebody with Addison's doesn't need to be restricted from interaction with other people," however, if Plaintiff is having problems with recurrent infections due to high doses of steroids, "avoiding crowds of people would be prudent."  Doc. 12-3 at 95-96.

Dr. Anderson described Plaintiff's past work as a loan officer as skilled and sedentary, as a customer service representative in banking and finance as skilled and light, and as a safe deposit box clerk as semiskilled and light (medium as described by Plaintiff).  Doc. 12-3 at 96-97.  The ALJ posited a person with

> a sedentary residual functional capacity, which is the ability to lift 10 pounds occasionally, less than 10 pounds frequently; [who] could only stand or walk for two hours in an eight[-]hour day; or sit for six hours in an eight[-]hour day.  She would need the ability to get up and stretch every 30 to 45 minutes, but not leaving the general work zone; just kind of in that same area.  She would need to avoid any ropes, no climbing; no ladders; no scaffolds; no crawling; could only do other postural activities at the occasional level.  She should avoid cold and heat extremes, wet and humid environments; avoid vibration; avoid fumes and odors; avoid hazards and machinery.  As a result of the immune issues Dr. Murphy mentioned, ought to have her in a non-public work environment, and work with just occasional coworker or supervisory interaction.  She does have the ability to understand, carry out, and remember at least detailed tasks and instructions….

Doc. 12-3 at 97.  Dr. Anderson opined that such person could not perform Plaintiff's past work since it involved complex tasks, interactions with the public and exertional limits that exceeded those of the hypothetical.  Doc. 12-3 at 97.  Dr. Anderson testified that there are jobs existing in significant numbers in the national economy that a person of Plaintiff's age, education, and experience with the same limitations could perform, including: document preparer, charge account clerk, and electronic printed circuit layout taper.  Doc. 12-3 at 98.  Dr. Anderson testified further that there are no available jobs for someone with the same characteristics and limitations who could not stay on task and concentrate during the course of an eight-hour workday and 40-hour work week, or who as often as once per week, arrived late, left early, or failed to appear.  Doc. 12-3 at 98-99.

*Medical Records*

Plaintiff's medical records indicate that she received treatment for back and knee pain from 2003 to 2005, and for depression and anxiety in 2002.  Doc. 13-5; Doc. 13-4; Doc. 14-2 at 20-34, 40-64 (back and knee pain); Doc. 13-3 at 4-65; Doc. 13-4 at 2-25 (anxiety and depression).  In 2006, Plaintiff was treated for lumbar spondylosis, hypertension, knee pain, and adrenal deficiency.  Doc. 12-9 at 5-8, 10-11; Doc. 12-10 at 31-34, 36, 41-42, 47-49, 57, 62-64, 78-80, 82-83.

On April 27, 2006, Plaintiff, complaining of shortness of breath, dizziness and a decrease in urine output, was taken by ambulance to Parkland Hospital, where she was found to be suffering from acute renal failure with low blood pressure and diagnosed with Addison's disease, a rare endocrine disorder involving the adrenal glands.  Doc. 12-9 at 15-21; Doc. 14-1 at 27.  After a five-day hospital stay, during which she received intensive intravenous steroid therapy, Plaintiff was released and instructed to continue oral steroids and other prescription medication.

Doc. 12-10 at 6-10.  On August 2008, Plaintiff had another Addisonian/hypotensive crisis.  Doc. 14 at 7-20.  Plaintiff was again stabilized after steroid treatment.  Doc. 14 at 7-10.

On November 5, 2008, Dr. Evan A. Knapp, psychologist, conducted a disability evaluation of Plaintiff.  Doc. 13-2 at 30.  He did not arrive at a diagnosis, noting only that Plaintiff has bereavement issues subsequent to the death of her husband and becoming unemployed.  Doc. 13-2 at 30-33.  During the evaluation, Plaintiff complained of depression, but reported that she cooked and drove, bathed, dressed and groomed herself, attended church occasionally, and enjoyed visiting friends.  Doc. 13-2 at 30-31.

On November 13, 2008, Dr. Richard Alexander, M.D., upon performing a psychiatric review technique, concluded that Plaintiff had non-severe impairments.  Doc. 13-2 at 34-47. Regarding functional limitations, he noted it only to a mild degree in (1) restriction of activities of daily living, (2) difficulties in maintaining social function, and (3) difficulties in maintaining concentration, persistence or pace; he also noted one or two episodes of decompensation of extended duration.  Doc. 13-2 at 44.  He documented that Plaintiff had a GAF score of 55-60, and presented no symptoms of depression.  Doc. 13-2 at 46.

Also on November 13, 2008, Dr. Teresa Fox completed a physical residual functional capacity assessment.  Doc. 13-2 at 48-55.  She concluded Plaintiff had the functional ability to occasionally lift 20 pounds, frequently lift ten pounds, and stand/walk/sit for six hours in an eight-hour workday.  Doc. 13-2 at 49.  She also concluded that Plaintiff could balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; but that she could never climb a ladder, rope or scaffold.  Doc. 13-2 at 50.

In 2009, Plaintiff also received physical therapy and treatment for degenerative joint disease and degenerative disc disease.  Doc. 13-8 (physical therapy); Doc. 14-1 at 4, 19, 26, 34 (degenerative joint disease); Doc. 14-1 at 32, 36 (degenerative disc disease).

On May 29, 2009, approximately one week after undergoing gynecological surgery, Plaintiff was transported by ambulance to the Doctor's Hospital emergency room, where she complained of spiking blood pressure readings, chest pressure, shortness of breath and dry mouth.  Doc. 13-6; Doc. 13-7.  She was diagnosed with "Adrenal Insufficiency" and "Adrenal Crisis," and discharged the following day after showing improvement following treatment with steroids and other medications.  Doc. 13-6 at 21, 28, 31, 37-38.

On February, 10, 2010, before the second administrative hearing, Dr. Howard A. Parness conducted a consultative examination of Plaintiff.  Doc. 14-2 at 2-14.  Upon completing a functional assessment, he concluded that Plaintiff had the functional ability to frequently lift up to 20 pounds, occasionally carry up to 20 pounds, sit for four hours in an eight-hour workday, stand for two hours in an eight-hour workday, and walk for two hours in an eight-hour workday, all without assistance.  Doc. 14-2 at 8-9.

On June 26, 2010, Plaintiff again was seen in the Parkland Hospital emergency room.  Doc. 14-4 at 3-48.  She complained of shortness of breath and sweating, and stated that she believed, based on the way she felt, that she was about to have another Addisonian crisis.  Doc. 14-4 at 8, 11.  She was hospitalized and treated overnight with intravenous steroids before being released.  Doc. 14-4 at 13-16.

On January 20, 2012, and November 16, 2012, Plaintiff was seen at Parkland's Garland Mental Health clinic, where she complained of stress and insomnia resulting from having to care for ailing family members, namely her husband, before he died, and her mother.  Plaintiff was

found to be suffering from depressive disorder, anxiety state, and insomnia.  Doc. 14-8 at 3-24;
Doc. 15-1.

On June 27, 2012, while at the Parkland Hospital emergency room for complaints of high
blood pressure, shortness of breath, sweating, and heart palpitations, Plaintiff reported that she
had had an adrenal crisis about a week before.  Doc. 14-9 at 40-61.  Upon examination, no
abnormalities were noted, and Plaintiff was subsequently discharged with instructions for diet
and exercise.  Doc. 14-9 at 42-60.

*ALJ's Findings*

In May 2013, the ALJ issued the decision unfavorable to Plaintiff that she now appeals.
The ALJ concluded that Plaintiff had the severe impairments of Addison's disease, morbid
obesity, renal failure, degenerative joint disease of the knee, cervical degenerative disc disease,
lumbar spondylosis, depression, and anxiety, Doc. 12-3 at 18, but did not have an impairment or
combination of impairments that met or equaled the criteria of any listed impairment.  Doc. 12-3
at 22.  The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform
a general range of sedentary exertional activity, subject to the limitations that she be permitted to
alternate between sitting and standing every 30 to 45 minutes and only occasionally balance,
stoop, bend, squat, kneel, and crouch.  Doc. 12-3 at 23.  The ALJ further found that Plaintiff had
the ability to understand, carry out, and remember detailed tasks and instructions, and that she
should be limited to non-public work, with no more than occasional co-worker or supervisory
interaction.  Doc. 12-3 at 23.  Lastly, the ALJ concluded that although Plaintiff was unable to
perform her past relevant work, she could perform other work that exists in significant numbers
in the national economy, including document preparer, charge account clerk, and electronic

prints circuit.  Doc. 12-3 at 28-29.  The ALJ thus concluded that Plaintiff was not disabled.  Doc. 12-3 at 30.

## II.    APPLICABLE LAW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan* , 38 F.3d at 236.

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be

considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920 (b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

## III.   ANALYSIS

### A.  The ALJ properly evaluated Plaintiff's credibility.

Plaintiff first challenges the ALJ's findings that, while Plaintiff "appear[ed] to be sincere and genuine" regarding the pain and limitations that she experienced, her "most serious symptoms and limitations are simply outside the range of reasonable attribution," and "the medically determinable impairments cannot reasonably be expected to produce the symptoms to the degree alleged" by Plaintiff.  Doc. 12-3 at 25-26.  Plaintiff argues that the ALJ erred when he discredited her testimony without applying the seven credibility factors set forth in Section 404.1529 and SSR 96-7p, and failed to consider her subjective complaints in determining Plaintiff's RFC.  Doc. 24 at 21-24 (citing 20 CFR § 404.1529; SSR 96-7p, 1996 WL 374186 at *5).  Further, Plaintiff asserts that the ALJ failed to identify any objective medical evidence to support the conclusion that Plaintiff's most serious symptoms are "outside the range of attribution."  Doc. 24 at 25-26.

Defendant responds that the ALJ considered and evaluated all symptoms, and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence, and other evidence required under the law. Doc. 25 at 9. Defendant asserts that the ALJ fulfilled his obligation to make affirmative findings regarding a claimant's subjective complaints by expressly rejecting Plaintiff's contention that her subjective symptoms and pain were of a disabling nature. Doc. 25 at 9. Defendant also maintains that the ALJ provided reasons throughout his decision to support his finding that Plaintiff's medically determinable impairments could not reasonably be expected to produce the symptoms to the degree she complained of. Doc. 25 at 9.

An ALJ's findings regarding the credibility of subjective symptom testimony is "entitled to considerable judicial deference." *Beck v. Barnhart*, 205 Fed. Appx. 207, 213 (5th Cir. 2006) (citing *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986)). Social Security Ruling 96-7p provides that:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.

SSR 96-7p, 1996 WL 374186 at *5. Instead, the ALJ must consider seven factors in making his determination on the credibility of the claimant's subjective complaints: (1) the individual's daily activities, (2) the location, duration, frequency, and intensity of the individual's symptoms, (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness, and side effects of any medications the individual takes, (5) treatment the individual receives, (6) any measure other than treatment the individual uses to relieve symptoms, and (7) any other factors

concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *5.

In assessing the ALJ's RFC determination, an "unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain." *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988). However, where the medical evidence does not support the degree or intensity of the claimant's subjective complaints, there exists no "uncontroverted medical evidence" that would require the ALJ to articulate reasons for discrediting the subjective complaints. *Jones v. Massanari* , 7:00-CV-0217-R, 2001 WL 881283, at *6 (N.D. Tex. July 27, 2001) (Buchmeyer, C.J.).

In this case, the ALJ cited the seven factors found at SSR 96-7p in discussing his assessment of Plaintiff's subjective complaints. Doc. 12-3 at 24. He also correctly stated that "[i]f there is no medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activity." Doc. 12-3 at 23. And, contrary to Plaintiff's argument, Doc. 12-3 at 26-28, the ALJ did discuss the evidence of record that supported his conclusion that Plaintiff's subjective complaints were not credible.

The ALJ gave significant weight to the medical opinions of Drs. Parness and Murphy. Doc. 12-3 at 26-27. He cited the conclusions of Dr. Murphy, who, after reviewing all of the submitted medical records, opined that despite Plaintiff's impairment, she could perform sedentary work in a climate- and humidity-controlled environment and "posturals" limited to occasional. Doc. 12-3 at 26-27. The ALJ also cited Dr. Parness' opinion that Plaintiff had the

functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, sit 4 hours in an 8 hour day, and stand and walk 2 hours in an 8 hour day, operate foot controls frequently, and occasionally engage in non-exertional activities.  Doc. 12-3 at 26.  However, based on Plaintiff's obesity, the ALJ reduced the functional capacity to the sedentary exertional level for standing and walking as well.  Doc. 12-3 at 27.  And while crediting Dr. Alexander's opinion that Plaintiff has "non-severe mental issues, the ALJ nonetheless gave Plaintiff "the benefit of the doubt," and considered her subjective complaints by including in the RFC limitations based on depression and anxiety.  Doc. 12-3 at 28.

The Court notes that while the arguments in her brief are very well stated, Plaintiff nonetheless fails to point to any uncontroverted medical evidence, indeed any medical evidence at all, attributing Plaintiff's complained of symptoms to her specific medical impairment(s).  *See* Fed. R. Civ. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co*., 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

Nevertheless, upon the Court's review, none of the medical records appear to reflect a determination by any medical professional, through test, examination or otherwise, that the severe pain, incapacitating fatigue, and mental confusion Plaintiff claims are symptoms or consequences of her medically-determined impairment(s).  The only notations of such symptoms are the recounts of Plaintiff's subjective complaints.  Again, subjective complaints not supported by medical evidence are insufficient to establish disability.  SSR 96-7p.

Notably, no statement from a treating source was presented during the administrative

proceedings.  Indeed, the ALJ noted the lack of objective evidence supporting Plaintiff's

symptomology during the following exchange at the April 2012 hearing with Plaintiff's counsel:

> ATTY:  Your honor, as you're aware, there is no Addison's listing; it's a flow through 9.00 …, but it does recognize many of the body symptoms that the claimant has complained of, has been treated for. And I want to talk with her about the different problems that she's had and whether they related it directly to the Addison's.

> ALJ:  Well, it's not – we're not really having a subjective dispute.  It's what do we have objectively to help support that.

> ATTY:  Right.

> * * *

> ALJ:  So what is Dr. Khan willing to do in terms of stepping up and describing the Addison's and the renal issue and how they're relating to function?

> ATTY:  She's a Parkland doctor, you know, that [sees] the claimant one time a month, she'll refill her medications to [sic] see if she's in crises or not.

> * * *

> ALJ:  I mean but I know – I've got all the Parkland records and you know I've got all the physical exams from when you go in, you know, in non-crisis times, and you know aside from the knee pains and you know you're doing generally well. But they don't describe any ongoing physical issues with the Addison's or the renal issues, which is what I really need.

Doc. 12-3 at 68-69.  Plaintiff and Plaintiff's counsel averred that they had been unsuccessful

obtaining a treating source statement from Dr. Khan, Plaintiff's treating physician.  Doc. 12-3 at

69-70, 76-77.  At the conclusion of the hearing, the ALJ stated:

> Okay, I'm going to send a subpoena out to this Dr. Khan and we'll see what she gets.  I'm going to ask her to describe everything that's going on to [sic] you with the Addison's and with your renal function.

> And that's really the, you know, what I need to hear from whether it comes from you from me, so we'll see if she'll respond to that, and – that's' where – really where we need to go next so—

Perfect, once I get those in if I can decide the case based on that that will be great. If not, if I need to bring you back in, and we need to have a little more discussion, we'll do that.  So right now we'll put the case on what we call post, just waiting to get the reply.

Doc. 12-3 at 77-78.  Ultimately, no statement/evaluation from Dr. Khan or any other treating source was included in the record.

Based on the foregoing, the Court concludes the ALJ's finding -- that Plaintiff's subjective symptoms and limitations are not backed by medical evidence to the degree she asserts -- is supported by substantial evidence.  Doc. 12-3 at 26-28.  Moreover, while not required in light of the dearth of contested medical evidence, the ALJ more than sufficiently articulated his reasons for discounting Plaintiff's subjective complaints.  *See Jones v. Massanari* , 7:00-CV-0217-R, 2001 WL 881283, at *6 (N.D. Tex. July 27, 2001) (Buchmeyer, C.J.) (where the medical evidence does not support the degree or intensity of the claimant's subjective complaints, there exists no "uncontroverted medical evidence" that would require the ALJ to articulate reasons for discrediting the subjective complaints).

### B.  The ALJ properly evaluated the chiropractor's opinion.

Plaintiff argues that the ALJ failed to weigh the medical opinion of Carin Walden, D.C., and such failure is material to the correct disposition of Plaintiff's claim.  Doc. 24 at 27. Defendant argues that the ALJ did not err in his failure to consider this evidence because it was prior to the alleged onset date of April 11, 2005, thus, was outside of the relevant period.  Doc. 25 at 18.  Defendant further avers that even if the ALJ had considered the chiropractor's opinion, the opinion would not have altered his finding that Plaintiff could perform work activity during the relevant period.  Doc. 25 at 18.  Therefore, any error amounts to nothing more than harmless error.  Doc. 25 at 18.

15

As Defendant correctly notes, Dr. Walden's letter to Dr. Cyrus Pecari, who then was Plaintiff's treating physician, is dated June 22, 2004 – before Plaintiff's alleged disability onset date.  Doc. 23-1 at 1-2.  That notwithstanding, the letter does not reference any clinical observations, examination notes, test results (save one blood pressure reading), or other evidence to support Dr. Walden's opinion that "[Plaintiff] returning back to work and putting her in a stressful situation may increase her blood pressure and her pain levels even more."  Doc. 23-1 at 1-2.  *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (treating physician's opinion may be given little or no weight "where the treating physician's evidence is conclusory [or] is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques").  Moreover, as previously discussed herein, the ALJ assigned significant weight to the opinions of Drs. Parness and Murphy, both medical doctors, as was within his authority to do.  Doc. 12-3 at 26-27.  *See Chrisner v. Astrue*, 249 Fed. Appx. 354, 356 (5th Cir. 2007) (citing *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991)) "the relevant regulations accord less weight to chiropractors than to medical doctors.").  Lastly, any error in failing to discuss Dr. Walden's opinion letter in detail, was harmless in light of the substantial evidence in the record supporting the ALJ's findings and conclusions.  *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1998) (procedural perfection is not required as long as the claimant's substantial rights have not been affected by an ALJ's error).

### C.   The ALJ's RFC finding is supported by substantial evidence.

Plaintiff argues that the ALJ's finding that Plaintiff "must be permitted to alternate sitting and standing every 30 to 45 minutes to stand and stretch in the general work zone" violate the rule of *Ripley v. Chater* rule because neither Dr. Parness nor Dr. Murphy come to that exact conclusion.  Doc. 24 at 29-33.  In other words, Plaintiff complains that no evidence supported the

ALJ's RFC; specifically, Plaintiff's testimony supports the ability to stand for no more that 15 to 20 minutes at a time, Doc. 24 at 30, and Dr. Parness opinion only supports a finding that Plaintiff stand for no longer that 30 minutes at one time without interruption, Doc. 24 at 31. Defendant argues that because the ALJ properly found Plaintiff's subjective complaints not credible, and because the RFC finding is not a medical assessment, the ALJ's RFC finding is not required to mirror the opinion of a doctor. Doc. 25 at 20-22.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

At the outset, Plaintiff's reliance on *Ripley* is misplaced. In *Ripley*, the ALJ concluded that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The appellate court noted that the record contained a vast amount of evidence establishing that the claimant had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* The court thus remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. Here, however, there is evidentiary support for the ALJ's RFC.

In particular, as Plaintiff concedes, Doc. 24 at 31, the medical evidence supports the limitation of alternating sitting and standing every 30 minutes in the RFC. Dr. Parness opined that Plaintiff could sit for up to one hour without interruption and stand for up to thirty minutes without interruption. Doc. 14-2 at 9. At the high end, in his Physical Residual Functional Capacity Assessment, Dr. Fox determined that Plaintiff can sit and/or stand for six hours in an eight-hour work day. Doc. 13-2 at 48. The ALJ's conclusion that Plaintiff should alternate

sitting and standing every 30 to 45 minutes is, therefore, based on substantial evidence.  Doc. 12-3 at 27.  *See also Capell v. Colvin*, No. 3:14-CV-4558-BK, 2015 WL 5459589, at *3 (N.D. Tex. Sept. 17, 2015) (Toliver, J.) (The ALJ is permitted to draw reasonable inferences from the evidence in making its decision, but is not required to incorporate limitations in the RFC that are not supported in the record).  Moreover, any error in extending the range to 45 minutes was harmless where the vocational expert was asked to consider the entire range, including the low end of 30 minutes, in determining what jobs were available in the national and local economy.

### D.  The ALJ did not violate SSR 85-15.

Plaintiff argues that the ALJ violated SSR 85-15's requirement to "thoroughly" consider "on an individualized basis" how work stress affects Plaintiff's ability to function, which led the ALJ to overstate Plaintiff's ability to sustain effort all day long, day after day.  Doc. 24 at 34-35. Defendant responds that the ALJ properly considered Plaintiff's alleged mental impairments, and specifically took into account all the testimony at the hearing and the medical records showing complaints of depression and anxiety.  Doc. 25 at 24.

The Social Security regulations provide:

> Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. Determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult…Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857, at *5-6 (Jan. 1, 1985).

As an initial matter, SSR 85-15 does not set out any "requirements," only considerations. Here, the ALJ stated that he "considered…the testimony at the hearing and the medical records showing complaints of depression and anxiety."  Doc. 12-3 at 28.  He noted that Plaintiff

independently maintains her personal care, prepares meals, does housework, and handles finances.  Doc. 12-3 at 28.  He also noted that Plaintiff's mental impairments do not prevent her from maintaining a work schedule.  Doc. 12-3 at 28.  Nevertheless, giving Plaintiff the benefit of doubt, the ALJ factored into the RFC some non-exertional limitations that were supported by the medical record and Dr. Knapp's mental consultative examination of Plaintiff.  Doc. 12-3 at 28.  Even if the ALJ erred in not specifically considering work "stress," such error was harmless since the ALJ did consider all mental impairments that were ostensibly medically determinable.

### E.  The ALJ was not required to mention Plaintiff's unsuccessful work attempt or complaints of fatigue.

Plaintiff argues that the ALJ failed to consider, and entirely overlooked, Plaintiff's unsuccessful attempt to do part-time work, Doc. 24 at 36, and complaints of severe fatigue and her need to lie down by 1:00 PM every afternoon, Doc. 24 at 38.  Relying on *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981), Defendant counters that the ALJ is under no obligation to discuss every item of evidence.  Doc. 25 at 25.  Defendant further argues that the ALJ found Plaintiff's most serious symptoms and limitations were simply outside the range of reasonable attribution, an implicit finding that Plaintiff's fatigue and need to lie down were not supported by the evidence in the record.  Doc. 12-3 at 26.

This issue is a non-starter, as Plaintiff wholly fails to demonstrate that the ALJ's discussion of Plaintiff's failed attempt to do volunteer work or need to lie down would have changed his decision.  *Ware*, 651 F.2d at 412.  In any event, there is no need to adopt a rigid approach that requires the ALJ to articulate specifically the evidence that supported his decision or to explicitly state the evidence that was rejected.  *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).  Moreover, as discussed previously herein, the ALJ must articulate reasons for rejecting

the claimant's subjective complaints of debilitating symptoms only when there is objective medical evidence supporting them. *Id.* There was no such supporting evidence here. Aside from Plaintiff's own testimony of fatigue and need to lie down, the evidence does not "clearly favor" Plaintiff in a way that required the ALJ to specifically articulate reason's for rejecting Plaintiff's subjective complaints. *Falco*, 27 F.3d 163.

### F. The ALJ properly considered the combined effect of Plaintiff's impairments.

Plaintiff argues that the ALJ failed to consider the "synergistic" effect of all of Plaintiff's ailments in combination. Doc. 24 at 40. Defendant responds that the ALJ properly considered Plaintiff's impairments as a whole when rendering his findings. Doc. 25 at 27.

In making a disability determination, "the ALJ must analyze both the 'disabling effect of each of the claimant's ailments' and the 'combined effect of all of these impairments.'" *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000)).

A review of the ALJ's decision in this case reveals that he was aware of, and applied, the appropriate cumulative impact standard. Doc. 12-3 at 22, 18-21, 26-28. The ALJ thoroughly summarized all of Plaintiff's medically determinable physical and mental impairments, the medical evidence, and the expert opinions and testimony. Doc. 12-3 at 18-21, 26-28. Moreover, the ALJ's RFC includes limitations based on both physical and mental impairments. Doc. 12-3 at 23-28. Plaintiff wholly fails to address what other limitations, if any, should have resulted from considering all of her medically determinable impairments in combination.

**G.  The ALJ did not err by failing to consider Plaintiff's entitlement to a closed period of disability.**

Plaintiff argues that the ALJ failed to properly consider her entitlement to a closed period of disability.  Doc. 24 at 43-45.  Plaintiff maintains that she was disabled due to Addison's disease for more than 12 months between the date she was terminated by BOA, April 11, 2005, and the initiation of treatment for her Addison's disease, April 27, 2006.  Doc. 24 at 43.

Defendant responds that there is no special requirement that the ALJ engage in an analysis of entitlement to a close-period of disability when the ALJ has found that Plaintiff has not been under a disability at any time since her alleged onset date.  Doc. 25 at 29.  Defendant further argues that any error was harmless.  Doc. 25 at 29.

A "closed period" of disability "is a finite period of time of which started and stopped before the date of the administrative decision of disability status."  *Dounley v. Commissioner of Social Sec. Admin.*, No. 3:08-CV-1388-O(BH), 2009 WL 2208021, at *8 (N.D. Tex. July 22, 2009) (Ramirez, J.).  When the ALJ grants disability benefits for a closed period of disability, two decisions occur.  *Joseph v. Astrue*, 231 Fed. Appx. 327, 329 (5th Cir. 2007).  The ALJ first finds the applicant disabled and grants benefits, and secondly engages in the termination decision-making process to find that the disability ended at some date prior to the hearing.  *Id.* The ALJ must apply the "medical improvement" standard to articulate when the closed period ends.  *Teague v. Astrue*, 342 Fed. Appx. 962, 963 (5th Cir. 2009) (citing *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002)).

Here, the ALJ determined that Plaintiff "has not been under a disability… from April 11, 2005, through the date of th[e] decision."  Doc. 12-3 at 29.  That decision encompasses the entire period of claimed disability.  Thus, there was no need for the ALJ to consider a closed period of

disability.  *See Renfro v. Callahan*, No. 3:97-CV-0619-D, 1997 WL 694703, at *3-4 (N.D. Tex. Nov. 5, 1997) (Fitzwater, J.) (finding no basis for remand to consider entitlement to a closed period of disability where there was substantial evidence to support the ALJ's decision that plaintiff was never disabled).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 22, is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**SIGNED** on March 29, 2016.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE